25CA0585 Parental Resp Conc JSSR 07-23-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0585
Garfield County District Court No. 23DR109
Honorable Anne K. Norrdin, Judge

---

In re the Parental Responsibilities Concerning J.S.S.R., a Child,

and Concerning Maria Isabel Rodriguez Lopez,

Appellant,

and

Jose De Jesus Solano Rosas,

Appellee.

---

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE FREYRE
Kuhn and Taubman*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 23, 2026

---

Defiance Law Firm, Peter A Rachesky, Lara Horst, Glenwood Springs, Colorado, for Appellant

Coleman Law Office, P.C., Cassie L. Coleman, Glenwood Springs, Colorado, for Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    Petitioner, Maria Isabel Rodriguez Lopez (mother), appeals the district court's judgment concluding that she was never common law married to respondent, Jose de Jesus Solano Rosas (father). We affirm.

## I.    Relevant Facts

¶ 2    Mother and father began dating around 2008. The couple later had a child, J.S.S.R. Mother claims she and father were married under common law. Father disagrees and claims they never intended to be married.

¶ 3    In 2023, father petitioned for a protection order against mother, and mother petitioned for an allocation of parental responsibilities for J.S.S.R., as well as a dissolution of marriage. The district court later held hearings on the parties' claims, including mother's claim that the parties had entered into a common law marriage.[1] After weighing the "compelling evidence on each side of the issue," the district court concluded that the parties

---

[1] The district court denied mother's common law marriage claim but retained jurisdiction over the parties' allocation of parental responsibilities under section 14-10-123(1)(a)(I), C.R.S. 2025. Accordingly, the district court ordered the clerk to reclassify the case as a parental responsibilities action.

had not entered into a common law marriage. Mother appeals that judgment.[2]

## II. Common Law Marriage

¶ 4 Mother contends that the district court erred in concluding that no common marriage existed between father and her because the court did not consider essential evidence that favored her claim. We are not persuaded.

### A. Standard of Review and Applicable Law

¶ 5 Colorado recognizes common law marriage. *See Hogsett v. Neale*, 2021 CO 1, ¶ 1. A party can establish a common law marriage by showing that the parties intended to enter a marital relationship — "that is, to share a life together as spouses in a committed, intimate relationship of mutual support and obligation." *Id.* at ¶ 3. But an agreement to marry in the future does not constitute a common law marriage. *Crandell v. Resley*, 804 P.2d 272, 276 (Colo. App. 1990).

---

[2] The district court also entered judgment on restraining orders and child support, but mother did not appeal those parts of the court's judgment. Therefore, we find those issues abandoned. *See In re Estate of Gonzalez*, 2024 COA 63, ¶ 10 n.1 (a party abandons an issue when she does not present arguments on it).

¶ 6    Courts must consider the totality of the circumstances when considering whether a common law marriage exists. *In re Estate of Yudkin*, 2021 CO 2, ¶ 19. And while courts may consider a number of factors to make this determination, *People v. Lucero*, 747 P.2d 660, 663 (Colo. 1987), no single factor is dispositive. *Yudkin*, ¶ 19.

¶ 7    "A determination of whether a common law marriage exists turns on issues of fact and credibility, which are properly within the trial court's discretion." *LaFleur v. Pyfer*, 2021 CO 3, ¶ 50 (quoting *Lucero*, 747 P.2d at 665); *see also Schuler v. Oldervik*, 143 P.3d 1197, 1201 (Colo. App. 2006) ("The trial court has 'an unparalleled opportunity to determine the credibility of the witnesses and the weight to be afforded the evidence which is before the court.'" (quoting *M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1384 (Colo. 1994)) (citing *Warren v. Farmers All. Mut. Ins. Co.*, 501 P.2d 135 (Colo. App. 1972))). "[W]e review the court's factual findings for clear error and its common law marriage finding for an abuse of discretion." *LaFleur*, ¶ 50. A finding is clearly erroneous when it has no record support. *Trinidad Area Health Ass'n v. Trinidad Ambulance Dist.*, 2024 COA 113, ¶ 22. A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or

unfair, or when it misapplies the law. *Bullock v. Brooks*, 2025 COA 6, ¶ 25.

## B. Analysis

¶ 8 In applying *Hogsett,* the district court acknowledged that mother presented evidence that coworkers and family considered her and father to be married, but it also considered more significant the following factors related to the possible existence of the parties' common law marriage:

- Mother and father never filed joint tax returns and never filed taxes with a status as "married, filing separately."

- They never jointly owned real property in the United States. Mother, however, said they jointly owned property in Mexico.

- They never engaged in mutual estate planning.

- They never had a wedding ceremony.

- They never exchanged engagement or wedding rings.

- Neither party designated the other as a beneficiary on insurance policies.

- They did not execute affidavits of common law marriage, but the parties' cultural values may explain why they did not do so.

- Father named mother as his "esposa" — the Spanish word for wife — on his redetermination of SNAP benefits form.

- Their child, J.S.S.R., shares both of their surnames.

- Mother testified that she and father married in July 2011 but indicated they had married in 2009 in her petition for dissolution of marriage.[3]

- Mother also said that, in the parties' Mexican culture, cohabitating meant they were considered married.

- Mother testified that father repeatedly said that the couple and their child were already a family.

- Mother and other witnesses testified that father would introduce himself as her husband at extended family gatherings and referred to mother's family as his in-laws.

---

[3] Mother testified at the hearing that the parties "didn't really recall the exact date we went to live together, so it was we'll just choose this date."

- Other witnesses testified that father called mother his wife.

- Mother testified that father was violent toward her, and he used his power and control against her. She contended that this abuse explained why some of the *Lucero* and *Hogsett* factors were missing.[4]

- Father repeatedly promised to marry mother, often following fights and hitting mother.

¶ 9    The district court found that father used marriage as a further method of control in the pattern of domestic violence toward mother. But the court found it persuasive that because father used marriage as leverage in controlling mother, both parties *knew* that they were not married. The court concluded, after considering these factors, that the parties were not married at common law.

---

[4] The district court, during its determination of the parties' protection orders, found that "mother presented far more credible testimony and evidence that it was primarily father who committed acts of physical aggression, assaults and exercised coercion and control over mother rather than the reverse." The court also said, "Mother's description of the relationship was one marked by coercion, control, violent outbursts, physical aggression toward her, verbal aggression toward her, and I found her testimony in this regard to be highly credible and corroborated by [other] witnesses."

¶ 10    Mother contends the court did not consider (1) the parties' decision to live together and create a marriage in July 2011; (2) the parties' cultural beliefs that when parties lived together they were considered married and that having a child added to this cultural belief; (3) that father named mother his "esposa" on his redetermination of SNAP benefits form; (4) mother's testimony that father said wedding rings were not needed because they were already a family; (5) father's reference to mother's sister as "cuñada" and her mother as "suegra," respectively meaning sister-in-law and mother-in-law; (6) other witnesses' testimony that they believed father and mother were married; and (7) the parties' conduct in light of the domestic violence mother had experienced from father.

¶ 11    As described above, the district court considered each of the factors mother now says are missing from the court's oral order. The district court reviewed the (conflicting) dates of the supposed marriage, the parties' culture, father's alleged terms for mother and her family, father's redetermination of SNAP benefits form, other witnesses' testimony, and how domestic violence shaped these factors. Thus, the record shows the court considered each of the factors mother says the district court did not address. Accordingly,

7

we may not substitute our judgment for the district court's and reweigh the factors the court considered to give mother a different outcome. *See, e.g., Cronk v. Bowers*, 2023 COA 68M, ¶ 20 (appellate courts are not at liberty to reweigh conflicting evidence).

¶ 12 Mother also contends that the district court abused its discretion in "conclud[ing] that the parties did not have an expressed or implied agreement to enter the legal and social institution of marriage, and that the parties were not married at common law." Mother is correct that express or implied agreements are not dispositive for a court to find the existence of a common law marriage. *See LaFleur*, ¶ 52 ("'[C]ourts should give weight to evidence reflecting a couple's express agreement to marry.' In the absence of such evidence, courts may infer such an agreement from the parties' conduct." (quoting *Hogsett*, ¶ 49)). But the district court here did not abuse its discretion by correctly acknowledging that mother and father had no such agreement. And this conclusion is corroborated by father routinely using a promise to marry as a form of coercion following domestic violence incidents.

### III. Father's Attorney Fees

¶ 13 Father requests his appellate attorney fees. He asserts that the "overwhelming evidence supported the fact that the parties were never married." To the contrary, the district court noted that both parties presented "compelling evidence" to prove or disprove the existence of a common law marriage. Our review of the record supports the district court's characterization of the evidence. Therefore, we decline to grant father's request for his attorney fees incurred on appeal under C.A.R. 39.1.

### IV. Disposition

¶ 14 The judgment is affirmed.

JUDGE KUHN and JUDGE TAUBMAN concur.